## CITY OF DOUGLAS v. FEDERAL RESERVE BANK OF DALLAS.

(Circuit Court of Appeals, Fifth Circuit. November 25, 1924.)

No. 4424.

1. **Banks and banking** ☞156—**Stipulation in bank book held to entitle bank to charge back against depositor's account amount of dishonored checks.**

Stipulation in bank book, "All out of town items credited subject to final payment," gives bank right to charge back against depositor's account checks for which credit is entered, if dishonored.

2. **Banks and banking** ☞175(½)—**Depositor's right of action for negligence in collection of check is exclusively against initial bank of deposit, and not negligent bank, to which it is sent for collection.**

Depositor, who deposited check on out of town bank, forwarded for collection to third bank, could not sue third bank for negligence in collection of check, but his right of action was exclusively against initial bank, notwithstanding stipulation in his bank book, "All out of town items credited subject to final payment;" there being no privity of contract between depositor and third bank.

3. **Bills and notes** ☞439—**Payment of check by drawee discharges drawer.**

Payment of check by drawee discharges drawer.

In Error to the District Court of the United States for the Western District of Texas; W. R. Smith, Judge.

Suit by the City of Douglas against the Federal Reserve Bank of Dallas. Judgment for defendant (300 F. 573), and plaintiff brings error. Affirmed.

Harry E. Pickett, of Douglas, Ariz., Cleon T. Knapp, of Bisbee, Ariz., James P. Boyle, of Douglas, Ariz., and Ed. M. Whitaker and W. M. Peticolas, both of El Paso, Tex., for plaintiff in error.

E. B. Stroud, Jr., of Dallas, Tex., and A. H. Culwell, of El Paso, Tex. (E. B. Stroud, Jr., of Dallas, Tex., and Turney, Bruges, Culwell, Holliday & Pollard, of El Paso, Tex., on the brief), for defendant in error.

Before WALKER and BRYAN, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge. For a valuable consideration the county of Cochise, state of Arizona, delivered to the plaintiff, city of Douglas, said state, a check drawn upon the Central Bank of Wilcox, Ariz., for the sum of $5,000, dated December 22, 1920, which the payee city deposited in the First

National Bank of Douglas on December 24th. On the same date the latter bank forwarded the check to the Federal Reserve Bank, El Paso Branch, the proceeds upon collection to be remitted for the credit of the city of Douglas. The 25th being a holiday (Christmas), and the 26th a Sunday, the check was in the hands of the bank at El Paso on December 27th, and on that date it was by said bank forwarded direct to the payee bank at Wilcox for payment. The bank at Wilcox stamped it "Paid," and transmitted in lieu thereof its own cashier's check for $6,426.17 (evidently covering, in addition, other items), drawn upon the Central Bank of Phœnix, Phœnix, Ariz., payable to the Federal Reserve Bank. The Reserve Bank forwarded this last-mentioned check to the branch of that institution at Los Angeles, Cal., and it in turn sent the cashier's check direct to the Central Bank of Phœnix for payment, where it was protested for nonpayment. The practice of sending the checks direct seems to have been authorized by special ruling of the Federal Reserve Board. The Central Bank of Wilcox failed on January 8th, and the Central Bank of Phœnix likewise closed its doors on January 19, 1921.

Thereupon the city of Douglas sued the Federal Reserve Bank of Dallas, of which the one at El Paso is a branch, setting up these facts and charging the defendant with negligence, in that if, instead of sending the original check direct to the payee bank, it had been sent to some other agency in the town of Wilcox, the money would have been paid, because the drawer at the time had sufficient funds on deposit with the Wilcox Bank with which to meet the check; that the defendant knew the Central Banks of Wilcox and Phœnix were insolvent, but nevertheless thus negligently handled the matter, in violation of the usual and customary rules of banking, and thereby rendered itself liable for the loss. Plaintiff accordingly prayed for judgment for the face of the check as the amount of its damages suffered through the alleged fault of the defendant.

One of the defenses specially pleaded below was that the petition disclosed no cause of action, in that there was no privity of contract between plaintiff and defendant, and that the former's remedy was to sue the initial bank of deposit, the First National Bank of Douglas, Ariz. This contention having been sustained by the trial court after a hearing on the merits, plaintiff prosecutes this writ of error.

The question presented is as to whether this court shall follow what is known as the "New York," as distinguished from the "Massachusetts," rule. Under the New York rule the depositor of a dishonored check, the payment of which has failed through the fault of a transferee of the initial depositary, must proceed against the said initial bank, upon the theory that there is no privity between him and the subsequent holders, while in Massachusetts he may sue directly the bank through whose fault the loss occurred. Exchange National Bank v. Third National Bank, 112 U. S. 276, 5 S. Ct. 141, 28 L. Ed. 722; Federal Reserve Bank of Richmond v. Malloy, 264 U. S. 160, 44 S. Ct. 296, 68 L. Ed. ——, 31 A. L. R. 1261. In the latter case the Supreme Court uses this language:

"The state decisions in respect of the liability of a correspondent bank to the owner of a check forwarded for collection by the initial bank of deposit are in conflict beyond the possibility of reconciliation. A number of states, following the 'New York rule,' so called, have held that there is no such direct liability, but that the initial bank alone is responsible to the owner. On the other hand, an equal, if not a greater, number of states, following the 'Massachusetts rule,' have held exactly the contrary, viz. that the initial bank, by the mere fact of deposit for collection, is authorized to employ subagents, who thereupon become the agents of the owner and directly responsible to him for their defaults. This court, in Exchange National Bank v. Third National Bank, 112 U. S. 276, 5 Sup. Ct. 141, 28 L. Ed. 722, after reviewing the two lines of decisions, approved the 'New York rule.' But the rule may, of course, be varied by contract, express or implied. 112 U. S. 289, 5 Sup. Ct. 141, 28 L. Ed. 722. Here the relations of the drawee to the initial bank of deposit are controlled by the Florida statute, with respect to which it must be presumed they dealt with each other. This statute had the effect of importing the 'Massachusetts rule' into the contract, with the result that the initial bank had implied authority to intrust the collection of the check to a subagent, and that subagent, in turn, to another, and the risk of any default or neglect on their part, rested upon the owners. 112 U. S. 281, 5 Sup. Ct. 141, 28 L. Ed. 722. It follows that the action was properly brought against the Richmond bank."

It appears to be conceded that the federal courts have followed the New York rule, but is contended the facts of the present

case take it without the rule, for the reason that there was a special undertaking, such as is referred to in the case last cited, and in which the court declared: "But the rule may, of course, be varied by contract, express or implied." But in applying the doctrine of the Massachusetts rule in that case it said: "Here the relations of the payee to the initial bank of deposit are controlled by the Florida statute, with respect to which it must be presumed they dealt with each other. The statute had the effect of importing the 'Massachusetts rule' into the contract, with the result that the initial bank had implied authority to intrust the collection of the check to a subagent, and that subagent, in turn, to another, and the risk of any default or neglect on their part rested upon the owners." Prior to this decision the Supreme Court of Florida had adopted the New York rule, and evidently the statute, which was later passed and recognized in the Malloy Case, was intended to change the law in that regard.

In addition to the charge of negligence, the appellant contends that, because the bank book in which the deposit was made with the First National Bank of Douglas contained the provision, "All out of town items credited subject to final payment," the case is taken out of the New York rule, and governed by a special stipulation making the Massachusetts doctrine applicable. It further asserts that the Supreme Court of the United States has never held that there was not privity between the depositor and the collecting bank, such as to render it liable to the owner of a check sued upon as in this case.

[1-3] We shall discsus, first, the contention that there was a special contract. The language quoted unquestionably gives to the receiving bank the right to charge back against the account of the depositor checks for which credit is· entered, if dishonored; but can this be construed as a limitation upon its liability for the faults of its agents, so as to take the case out of the doctrine of the United States courts? We think not. What the Bank of Douglas had in mind, and what the words in their ordinary usage mean, is that, if the check is not finally paid by the drawee, it will be charged back. Nothing whatever is said about the faults of any one or of exemption from liability therefor. In the present case the check was paid by the drawee and the effect was to discharge the drawer. Bank v. South Weymouth Bank, 184 Mass. 49, 67 N. E. 670; Milling· Co. v. Bank, 120 Tenn. 225, 111 S. W. 248, 18 L. R. A. (N. S.) 441;

Malloy v. Federal Reserve Bank (D. C.) 281 F. 1005. It (the check) has therefore never to this day been returned to the First National Bank of Douglas, in order that it might be·charged against the plaintiff.

Actually neither the plaintiff nor the First National Bank were parties to the check which was protested for nonpayment, and hence were not entitled to notice thereof. The cashier's check, which was issued in favor of the branch of the Federal Bank at El Paso, was drawn upon the Central Bank of Phœnix in favor of the El Paso Bank, and was the consideration given in payment of the original check. Of course, having accepted it instead of the money in payment of the first check, the El Paso Bank assumed an obligation of its own, independent of the original relation, to see that the cashier's check was paid, and the money transmitted back to the First National Bank of Douglas. So that the situation as we see it is unaffected by this language in the passbook. It did not extend or enlarge the initial bank's powers in the employment of its agents for collection, so as to make them subagents of the city of Douglas.

Returning now to the effect of the New York rule. While it is true the case of Exchange National Bank v. Third National Bank, supra, was one in which liability was sought to be fixed against the initial bank rather than the collecting bank, yet the language of that decision, in our opinion, can be construed in no other light than as pronouncing the doctrine that there was no privity between the latter and the depositor of the check. We quote therefrom as follows:

"There is no statute or usage or special contract in this case to qualify or vary the obligation resulting from the deposit of the drafts with the New York bank for collection. On its receipt of the drafts, under these circumstances, an implied undertaking by it arose to take all necessary measures to make the demands of acceptance necessary to protect the rights of the holder against previous parties to the paper. * * * The general profits of the receiving bank from the business between the parties, and the accommodation to the customer, must all be considered together, and form a consideration, in the absence of any controlling facts to the contrary, so that the collection of the paper cannot be regarded as a gratuitous favor. Smedes v. Bank of Utica, 20 Johns. 372, and 3 Cowen, 662; McKinster v. Bank of Utica, 9 Wend. 46, affirmed in Bank of Utica v. McKinster, 11 Wend. 473. The contract, then, becomes one

to perform certain duties necessary for the collection of the paper and the protection of the holder. The bank is not merely appointed an attorney, authorized to select other agents to collect the paper. Its undertaking is to do the thing, and not merely to procure it to be done. In such case, the bank is held to agree to answer for any default in the performance of its contract, and whether the paper is to be collected in the place where the bank is situated, or at a distance, the contract is to use the proper means to collect the paper, and the bank, by employing subagents to perform a part of what it has contracted to do, becomes responsible to its customer. This general principle applies to all who contract to perform a service. It is illustrated by the decision of the Court of King's Bench in Ellis v. Turner, 8 T. R. 531, where the owners of a vessel carried goods to be delivered at a certain place, but the vessel passed it by without delivering the goods, and the vessel was sunk and the goods were lost. In a suit against the owners for the value of the goods, based on the contract, it was contended for the defendants that they were not liable for the misconduct of the master of the vessel in carrying the goods beyond the place. But the plaintiff had judgment, Lord Kenyon saying that the defendants were answerable on their contract, although the misconduct was that of their servant, and adding: 'The defendants are responsible for the acts of their servant in those things that respect his duty under them, though they are not answerable for his misconduct in those things that do not respect his duty to them.' The distinction between the liability of one who contracts to do a thing and that of one who merely receives a delegation of authority to act for another is a fundamental one, applicable to the present case. If the agency is an undertaking to do the business, the original principal may look to the immediate contractor with himself, and is not obliged to look to inferior or distant under-contractors or subagents, when defaults occur injurious to his interest."

When the Supreme Court says: "The bank is not merely appointed an attorney, authorized to select other agents to collect the paper. Its undertaking is to do the thing, and not merely to procure it to be done. In such case, the bank is held to agree to answer for any default in the performance of its contract, and whether the paper is to be collected in the place where the bank is situated, or at a distance, the contract is to use the proper means to col-

lect the paper, and the bank, by employing subagents to perform a part of what it has contracted to do, becomes responsible to its customer"—it would seem clear that the conclusion was that those employed by the initial bank were not the subagents of the depositor, but agents of the depositary. Undoubtedly, if the subsequent transferee, or collecting bank, could be said to be the agent of the owner in these circumstances, it must necessarily arise from the authority, express or implied, from the owner to the initial bank to make such employment. As is stated at other places in the opinion quoted from, the owner of a check, when depositing it for collection, does not know the channels through which the bank may send it, and certainly there is no direct legal tie between him and any one else to whom it may be transmitted. The contract is between the first bank and the one to whom it is sent for collection, and for the violation of which, through negligence or otherwise, the transferee is liable to the transferror.

In those cases where it is held that the owner of the check may pursue directly the collecting bank, it is upon the theory of implied authority in the initial bank to make the employment for the benefit of the owner, and as to which the collector is held to assent. Under this rule the initial bank is only accountable for negligence in selecting a responsible and faithful agent for the owner, and cannot be held liable for the subsequent faults of the collecting agent, in which it had no part or reasonable ground to anticipate would be committed. In other words, there is apparent inconsistency in the idea that both the initial and collecting banks, or either of them, at the choice of the owner, can be held liable in these circumstances. None of the elements necessary to a solidary obligation exists. The matter, therefore, must be governed by the effect of the contract, and when it is determined, as the federal courts have decided, that the initial bank undertakes, in the absence of express or implied understanding otherwise, to collect the check, and to be itself responsible to the owner for the fault of its own agents, there arises no relation between the owner and the collecting bank, out of which a right of action for failure to perform can be maintained. Our conclusion is that the ruling of the lower court upon the special defense is sustained by the law applicable thereto.

In its brief plaintiff urges upon us the contention that, the El Paso Bank having accepted the check of the Wilcox Bank upon the Phœnix Bank, instead of money,

and the original check having thereby been paid, the defendant became liable to it as a debtor for funds had and received. However, this suit rests entirely upon a demand for damages for violation of a contract, and a careful reading of the petition will not disclose the slightest suggestion of a right based upon assumpsit. Of course, the two causes of action are entirely distinct, and we are not permitted to treat the petition as one in assumpsit, even though a right of action might exist upon that score, as to which we express no opinion.

For the reasons assigned, the judgment of the lower court is affirmed.