**NATIONAL SURETY CO. v. STATE OF NEW MEXICO, for Use and Benefit of SANDOVAL COUNTY. ***

(Circuit Court of Appeals, Eighth Circuit. December 6, 1926.)

No. 7332.

1. **Depositaries** ⊂⊃13—**Surety on depositary bond held liable for loss of county's funds, in view of its agent's acquiescence in manner of handling of checks intended to effect transfer of county's account.**

Where agent of surety on bank's depositary bond procured county treasurer to draw checks for amount of deposit in favor of another bank, and acquiesced in that bank's receipt of cashier's check in payment of treasurer's checks, which cashier's check was in turn paid by draft on a third bank, which draft was not paid before original depositary of county funds closed, *held*, attempted transfer of county's account was not completed, and surety was liable on depositary's bond.

2. **Principal and surety** ⊂⊃97—**Surety's obligation cannot be changed without his consent.**

It is a general rule that surety's obligation cannot be changed without his consent, and if it be materially changed, or a new obligation substituted by the principal and obligee, the surety is released.

Appeal from the District Court of the United States for the District of New Mexico; Colin Neblett, Judge.

Suit by the State of New Mexico, for the use and benefit of the County of Sandoval, against the National Surety Company. From a decree for plaintiff, defendant appeals. Affirmed.

Francis C. Wilson, of Santa Fé, N. M., for appellant.

John Venable, of Albuquerque, N. M. (A. A. Sedillo, of Albuquerque, N. M., on the brief), for appellee.

Before LEWIS, Circuit Judge, and MUNGER and FARIS, District Judges.

LEWIS, Circuit Judge. This is a suit on an indemnity bond, to reform it (which was not contested), for its breach and for damages. The bond was required of and given by the State National Bank at Albuquerque, as depositary of public moneys of the County of Sandoval, New Mexico; and appellant was its surety. Its conditions and obligations were these:

"The Condition of the Foregoing Obligation is Such, that whereas, the said Principal, in consideration of the receipt of certain moneys of the County of Sandoval in the State of New Mexico on deposit for safe keeping (the amount whereof shall be subject to withdrawal or diminution by the Treasurer of said County of Sandoval as the requirements of

said County of Sandoval shall demand, and which amount may be increased or decreased as said Treasurer may determine) and for the privilege of keeping the same, has agreed to pay and will pay the said County of Sandoval in the State of New Mexico, interest on all moneys so deposited at the rate of three per centum (3%) per annum, the same to be monthly on the first day of each month, upon the average daily balance of moneys of said County of Sandoval so on deposit for the preceding month or fraction thereof:

"Now, Therefore, if the said Principal shall, from the 24th day of March, 1923, to the 24th day of March, 1924, on the first day of each and every month, render to the Treasurer and the Board of Finance of said County of Sandoval a statement, in duplicate showing in detail the daily balance of said moneys so held by said principal on deposit and the amount of interest accrued thereon for the past preceding month, and shall pay over said deposit and said interest, upon the check, order or demand in writing of the officer thereunto duly authorized, and shall calculate, credit and pay interest as aforesaid, at the rate and in the manner aforesaid, and shall in all respects save and keep the said County of Sandoval safe and harmless by reason of the making of said deposit or deposits and shall generally do and perform each and everything required of depositories of public funds to be done and performed by the provisions of a certain act of the State of New Mexico, entitled, 'An Act in Relation of Public Moneys, etc.,' enacted by the Second Legislature of the State of New Mexico [Laws 1915, c. 57], then this obligation shall be void and of no effect, otherwise to be and remain in full force and virtue.

"It is a further condition of this obligation, however, that said Surety shall have the right to terminate its liability hereunder by giving thirty days notice in writing to the Treasurer and to the Board of Finance of said County of Sandoval of its election so to do, and after the giving of such notice no further moneys shall be deposited with such depositories, and thereupon an accounting shall be immediately had of the liability of such depository for the moneys theretofore deposited with it, and until the payment of all moneys found to be due on such accounting, this bond shall remain in full force and virtue."

Under the statute the County Treasurer was then required to deposit the county's moneys in the bank, which he did; and on his checks, which the bank was required to honor, they were to be paid out by the bank. The deposits were general, not special. They were

mingled with other funds of the bank, and the relation between it and the county was the ordinary one between banks and depositors, that of debtor and creditor. The obligation of the Bank, stated in the bond, was to account for the deposits by paying the Treasurer's check.

[1] Early in January, 1924, appellant had some doubt about the solvency of the bank. It caused its local agent at Albuquerque to make request on the County Treasurer that the balance of the county's deposits then with the bank, amounting to $17,500, be checked out and deposited in the First National Bank of Albuquerque. The local agent had an interview with the Treasurer for that purpose. The treasurer advised the local agent that he could not do that unless and until the county should designate the First National as a depositary. At the request of the agent that was done. On January 14, 1924, appellant served notice on the County Treasurer of its intention to withdraw as surety, as the bond provided, and on that day the Treasurer and appellant's local agent went to the First National Bank and the Treasurer gave to that bank his two checks, one for $10,000 and one for $7,500 on the State National Bank, payable to the First National Bank. They were accepted by the latter, the Treasurer was credited with them as a deposit, and received the bank's passbook showing the amount so credited. The deposit slip issued by the bank to the Treasurer recited that the checks were deposited for credit or collection at depositor's risk until final actual payment should be received, that the bank was acting as the depositor's agent, with power to appoint subagents, that the subagents should be agents of the depositor and the bank held liable for its own defalcation only. The First National Bank presented these two checks to the State National Bank on January 14, the latter accepted them, stamped them paid, charged the $17,500 to the account of the County Treasurer and issued to the First National Bank therefor its cashier's check for the $17,500. At that time the State National had in its vaults $102,449.84. On the next day the First National Bank presented to the State National its cashier's check for the $17,500, that check was stamped paid by the State National and it issued to the First National in payment therefor its draft on the Mechanics & Metals National Bank of New York for that amount. On the back of the cashier's check the First National Bank endorsed: "Received payment. First National Bank, Albuquerque, N. M." On that day the State National had in its vaults $79,654.70. On

January 17, 1924, the State National was closed, it was insolvent and was taken over by the Comptroller in receivership. The First National endorsed and transmitted the draft on the Mechanics & Metals National Bank in due course for collection, but it has never been paid. Thereafter the First National presented its claim on this unpaid draft to the receiver of the State National, the claim was allowed and a dividend to the amount of $5,250.40 has been paid to the First National on the claim. The court gave credit on the allowed claim for the dividend and entered judgment against appellant for the remainder with interest and costs.

On the facts stated (without more), it would seem that the court should have found for appellant; and it is so argued by its counsel. Exchange National Bank v. Third National Bank, 112 U. S. 276, 5 S. Ct. 141, 28 L. Ed. 722; Federal Reserve Bank v. Malloy, 264 U. S. 160, 44 S. Ct. 296, 68 L. Ed. 617, 31 A. L. R. 1261; First Nat. Bank v. Fed. Res. Bank (C. C. A.) 6 F. (2d) 339. It is insisted by appellant that after the transactions of January 14, just stated, when the Treasurer's checks given to the First National for the balance of his account in the State National were presented to the latter, accepted, stamped paid, charged to the Treasurer's account, and the cashier's check of the latter bank given to the First National in payment of the Treasurer's checks, the State National was not indebted to the County Treasurer as depositary. The settlement of the First National with the State National was, it is said, a closed transaction. The Treasurer's checks had been paid and the First National had become the county's debtor for the amount which they represented. Morse on Banks and Banking (5th Ed.) § 541; Am. Nat. Bank v. Miller, 229 U. S. 517, 33 S. Ct. 883, 57 L. Ed. 1310; Security Nat. Bank v. Old Nat. Bank (C. C. A.) 241 F. 1; Nat. Bank v. Burkhardt, 100 U. S. 686, 25 L. Ed. 766. But the testimony of the president of the First National Bank as to what occurred on January 14, when appellant's local agent and the County Treasurer came to that bank must be considered. He testified that appellant's local agent stated to him that he was anxious that the deposit of the county in the State National be immediately closed up and the funds of the county in that bank transferred to the First National, and requested that the First National present the Treasurer's checks at once and demand cash. The president replied to the local agent that if he wanted cash from the State National on the checks he would have to go and get it himself, that the

First National could not do that, that he (the president) did not think he could get the cash, the past practices between the two banks had been such that he did not feel he had a right to demand cash, that he was willing to send the checks over at once but anticipated they would be taken up by a cashier's check and if that should be done he would present the cashier's check the next day and would likely receive for it exchange to be issued by the State National on one of its correspondents; that by this conversation and the inscription placed on the deposit slip of his bank for the two checks he intended to protect, and thought he was protecting, the First National against any liability. He further stated to the local agent and the Treasurer that the State National's drafts had been paid so far. After this conversation outlining the procedure that the First National would take in collecting the two checks the deposit was made. Appellant's local agent testified he could not remember that this conversation was had at the time stated, and said that the president of the First National told him three or four days later, after the State National closed, what he had done. It does not appear that the County Treasurer said anything about how the checks were to be handled when he took them to the First National. He seems to have been acting on the request of the agent. He stood by and heard the conversation between the agent and the president of the First National. He had drawn the checks at the agent's request before they went to the bank. The president further testified that when he presented the claim to the receiver of the State National he proposed that it be made out in favor of the First National as agent of Sandoval County, but that the receiver objected and said it should be presented as the claim of the First National. He stated that his bank was acting for the county in filing the claim and the dividend when received was turned over to the county. Assuming that the court accepted the testimony of the president of the First National as to what occurred at that bank on January 14, it would seem that what was done in handling the two checks on the State National for the purpose of transferring the deposit to the First National had the full acquiescence if not the express approval of appellant's agent and the County Treasurer; and that the First National as their agent did exactly what the president of that bank proposed it would do. There is no doubt that appellant's agent and not the Treasurer was insisting upon an immediate transfer. Appellant and not the county would ultimately bear the loss if the checks should not be paid. The statute and the bond obligated the depositary to honor the checks of the County Treasurer for the deposits. Cash could, of course, have been demanded on them when they were presented, but the president of the First National stated to the agent just what he would do if the checks were left with the First National, and he followed exactly the procedure which he outlined to them. Acquiescence in that procedure was equivalent to an instruction to proceed in that way. In legal effect it was the same as if the Treasurer and appellant's agent had done exactly what the First National did, first accepted the cashier's check for the Treasurer's checks, then the New York draft for the cashier's check. The solvency of the State National Bank was in question, and the one purpose of the parties was to take the course best suited to transfer the county's funds from it to the First National. The cashier's check and the draft issued by the State National to take up that check were neither in fact paid; and the county's deposit of $17,500 was with that bank when it failed. Its obligation in the bond was to pay over the deposit on the checks of the Treasurer therefor, and "in all respects save and keep the said County of Sandoval safe and harmless by reason of the making of said deposits."

[2] It is argued that when the Treasurer's checks were presented to the State National, stamped paid, and the $17,500 which they represented was charged to the Treasurer's account the county was not thereafter a depositor in that bank; and that when the State National issued its draft on New York in payment of its cashier's check the only obligation imposed on it as a result of the transactions was its liability on that draft; that this was a material change of the relation between the bank and the county—from an open checking account to the depositary's draft, a new and different obligation of the bank from that named in the bond. And this, it is said, released the surety. It is, of course, a general rule that the surety's obligation cannot be changed without his consent, and if it be materially changed or a new obligation substituted by the principal and the obligee, the surety is released. Wood v. Steele, 6 Wall. 80, 18 L. Ed. 725; Martin v. Thomas, 24 How. 315, 16 L. Ed. 689; Zeigler v. Hallahan (C. C. A.) 131 F. 205; American Bonding Co. v. Pueblo Inv. Co. (C. C. A.) 150 F. 17, 9 L. R. A. (N. S.) 557, 10 Ann. Cas. 357; Mundy v. Stevens (C. C. A.) 61 F. 77; Simonson v. Grant [Thori], 36 Minn. 439, 31 N. W. 861; Snodgrass v. Shader, 113 Ark.

429, 168 S. W. 567; Utterson v. Elmore, 154 Mo. App. 646, 136 S. W. 9; 32 Cyc. p. 177. But if the change or substitution is made with the consent of the surety the rule does not apply. Accepting the testimony of the president of the First National as the true explanation of what was done on January 14, it can hardly be said that the relation of the State National to the county and the obligation of the former to the latter were materially changed. It paid out no money through the transactions here under consideration. But if changed, that change was made with the acquiescence of the surety in the change. It caused the changed relation to be made. Its local agent was the active party in the attempt to transfer the deposit at that time. When he asked the president of the First National in the presence of the County Treasurer to present the two Treasurer's checks and demand cash the request was refused and the local agent was notified if he wanted that done he must take the checks and demand the cash himself. The president then outlined the procedure that would be taken, and was taken, if the checks were to be turned over to the First National; and there is no testimony that either the local agent or the Treasurer objected to the proposed procedure. This evidence sustains the conclusion which must have been drawn from it by the trial court, that appellant consented to the proposed course that was to be taken in an effort to transfer the deposit. Having consented the surety cannot repudiate the transaction and cast the result of failure on the First National.

On the case as we have stated it, supported, as we think it is, by the proof, it cannot be said that the judgment is not sustained by the law and the facts; and it is affirmed.