---

(17 App. Div. 496.)

### KELLEY v. PHOENIX NAT. BANK.

(Supreme Court, Appellate Division, First Department. May 14, 1897.)

1. INTEREST—RIGHT TO—PLEADING AND PROOF.
   Plaintiff in an action on a bond payable at a certain time and place may recover interest from such time, unless defendant alleges and proves that he then and there had the money ready to pay the bond, and that he kept it there, or paid it into court.

2. TENDER—WHAT CONSTITUTES—PUBLICATION OF NOTICE.
   A notice published in several New York papers for one week that bonds would be paid at a certain time and place other than that named in the bonds is not a tender of payment as to holders living in other states, where the notice was not brought to their attention until several months later.

3. INTEREST—RATE AFTER MATURITY.
   Bonds draw interest after maturity at the rate specified in the bonds where the obligor notified the holders that such rate would be continued after maturity, and the holders, in consequence of the notice, did not present the bonds for payment.

4. SAME—AGREEMENT TO PAY—CONSIDERATION.
   Forbearance by the holders of bonds to present them for payment at maturity is a sufficient consideration for a promise by the obligor to pay interest after maturity at the rate specified in the bonds.

5. BANKS—COLLECTIONS—LIABILITY OF OWNER.
   The owner of negotiable paper placed it with a Boston bank, to be transmitted to its New York correspondent for collection, for the account of the owner, and the Boston bank so instructed the New York bank. *Held*, that the New York bank became the agent of the owner of the paper, and was liable to him for negligence in making the collection.

Submission without action, pursuant to Code Civ. Proc. § 1279, of a controversy between Michael Edward Kelley as plaintiff and the Phœnix National Bank as defendant. Judgment for plaintiff.

Argued before WILLIAMS, PATTERSON, O'BRIEN, INGRAHAM, and PARKER, JJ.

Samuel H. Ordway, for plaintiff.
Henry M. Ward, for defendant.

WILLIAMS, J.  The facts admitted are very voluminous, and need not be recited here.  The first question presented is whether the holders of the bonds were entitled to interest thereon from the time the principal became due and payable, January 1, 1891, until the time such principal was actually paid, July 1, 1891.  The principal, by the terms of the bonds, was made payable at a specific time and place,—January 1, 1891, at the Union Trust Company, in the city of New York.  Payment not having been made at the time agreed upon, the holders of the bonds could maintain an action, without presentation or demand, to recover such principal.  In such action, if the company alleged and proved that it had the money to pay the principal ready at the time and place of payment agreed upon, and thereafter kept it there or paid it into court, the holders could recover only the principal, without interest or costs, and would be chargeable with defendant's costs; but, unless such allegation and proof were made, the holders could recover, not only the principal, but the interest and costs also, and nothing would stop the running of the interest except actual payment of the principal or tender duly made.  Hills v. Place, 48 N. Y. 520, and cases therein cited.  It is admitted that the company did not have the money to pay the principal ready at the time and place of payment agreed upon, nor at the time agreed on at any other place, to pay the principal.  Interest, therefore, ran upon the unpaid principal until the time it was actually paid unless there was a tender of such principal on February 24, 1891, duly made.  We are unable to find in the statement of admitted facts anything showing such tender.  The only fact claimed as amounting to such tender is the notice of February 21, 1891.  That notice was published in three New York newspapers for one week.  Some of the holders of these bonds lived in Boston, Mass., and some in Baltimore, Md.  It is admitted that the notice was not actually brought to their attention until after July 1, 1891.  This notice stated that the principal of the bonds would be paid February 24, 1891, not at the place of payment agreed upon in the bonds, but at the Mercantile Trust Company in New York City, and that no interest would be paid after that date.  It needs no argument to show that this notice in no way constituted a tender of payment of the principal, so as to stop the running of interest.  The holders of the bonds were therefore entitled to interest on the bonds until the principal was actually paid, July 1, 1891.

The next question presented is whether the rate of interest to which the holders were entitled was 7 per cent., the rate specified in the bonds, or the legal rate of interest in 1891, which was 6 per cent.  There was no agreement in the bonds to pay interest after the maturity of the bonds January 1, 1891, and, unless there was some agreement outside the bonds to pay such interest, the recovery of interest would be only in the nature of damages for the breach of contract to pay the principal on January 1, 1891, and interest so recoverable as damages would be only at the legal rate, 6 per cent.  It is claimed that an agreement was made to continue paying interest at the rate of 7 per cent. until the payment of the prin-

cipal was actually made, by the circular notice of December 23, 1890. This notice was brought to the attention of the holders of these bonds, and they relied upon its terms, and were thereby induced to forbear presenting their bonds for payment until July 1, 1891. This notice was given by the new company, but this company had the duty imposed upon it of paying these bonds. The notice was equivalent to an undertaking on the part of the company that if the holders of the bonds would forbear to present them for payment until July 1, 1891, the company would pay 7 per cent. interest until the principal should actually be paid. We see no reason why the agreement was not founded upon a sufficient consideration, and could not be enforced. The company assumed the agreement was a binding one, and paid interest at the higher rate, until February 24, 1891, when it claimed it had the right to pay the principal, and stop the interest. It did have the right, at any time before July 1, 1891, to pay or tender payment of the principal, and thus stop the interest; but the notice of February 1, 1891, as we have seen, did not amount to a tender of payment, and actual payment was not made until July 1, 1891. We think, therefore, that the holders of the bonds were entitled to interest on their bonds at the rate of 7 per cent. until the principal was actually paid.

The remaining question presented is whether the defendant is liable to the plaintiff for the interest from February 24, 1891, to July 1, 1891, which defendant failed to collect as directed by the holders of the bonds. It is claimed by the defendant that there was no privity of contract between the defendant and the holders of the bonds as to the collection of the principal and interest in question. There is a line of cases holding that, where the holder of commercial paper employs a bank to collect a bill in a distant place, and this bank employs another bank, in such distant place, as its correspondent and agent to collect the bill, the second bank not being the agent of the holder of the paper, but merely the agent of the first bank, is not liable to such holder for any neglect in regard to the collection. Montgomery County Bank v. Albany City Bank, 7 N. Y. 460; Corn Exch. Bank v. Farmers' Nat. Bank of Lancaster, Pa., 118 N. Y. 443, 23 N. E. 923. This principle, however, is not applicable to the facts of this case. By the thirty-first and thirty-second clauses of the statement of admitted facts it is said that the bonds and the order for the interest in question were delivered by the holders of the bonds to the Boston bank as their agent for transmission to New York City, with instructions by the holders to the Boston bank to transmit them to its correspondent in New York for collection for them and their account, and the holders directed the Boston bank to instruct its correspondent to collect for them and for their account the principal and interest. The bonds and interest order were, in accordance with these instructions, transmitted and delivered by the Boston bank to the defendant. Upon these admitted facts the defendant was made the agent of the holders of the bonds, and was, therefore, liable to them for its neglect to collect the full amount of the interest order. Without asking for any instructions from its principals, it accepted

the amount of the bonds and interest at 7 per cent. only to February 24, 1891, and surrendered the bonds, and all the bonds secured by the mortgage were canceled, and the mortgage was discharged. The defendant was, therefore, guilty of neglect or wrong, which rendered it liable to the holders of the bonds for this uncollected interest. The plaintiff, by assignment, has become the owner and holder of this claim against the defendant.

We think judgment should be rendered in the case in favor of the plaintiff against the defendant for the amount claimed, $612.50, with interest from July 1, 1891, with costs. All concur.