BLOCK et al. v. MAYOR, ETC., OF CITY OF MERIDIAN, MISSISSIPPI.

(Circuit Court of Appeals, Fifth Circuit. May 10, 1909.)

No. 1,879.

1. PRINCIPAL AND AGENT (§ 183*)—CONTRACT MADE BY AGENT—ACTION BY UNDISCLOSED PRINCIPAL.

Where a contract is made by an agent for an undisclosed principal, the latter may sue thereon in his own name.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 692; Dec. Dig. § 183.*]

2. EVIDENCE (§ 459*)—PAROL EVIDENCE—PARTIES—UNDISCLOSED PRINCIPAL.

Parol evidence that a party to a contract was an agent acting for plaintiffs as an undisclosed principal is admissible to explain the transaction, and is not objectionable as contradicting the writing.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2112; Dec. Dig. § 459.*]

3. MUNICIPAL CORPORATIONS (§ 254*)—CONTRACTS—RESCISSION.

Defendant corporation having entered into a formal contract for street and city lighting with plaintiffs for five years, before the time arrived for performance, passed a resolution that the negotiations (referring to the contract) were canceled and annulled and held for naught. *Held*, that such resolution was a renunciation of the contract by the city, entitling plaintiffs to sue thereon at once, plaintiffs being entitled to the maintenance of the contractual relation, and not merely to a performance when the time for performance arrived.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 696; Dec. Dig. § 254.*]

In Error to the Circuit Court of the United States for the Southern District of Mississippi.

Smith, Hirsh & Landau and G. Q. Hall, Hall & Jacobson, for plaintiffs in error.

Williamson & Gilbert, W. H. Armbrecht, and Baskin & Wilbourn, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge. This is an action at law to recover $200,000 damages for breach of contract. The defendant demurred to the amended declaration; the Circuit Court sustained the demurrer and dismissed the case; and the plaintiffs, by writ of error, appeal to this court. Two alleged defects in the declaration are assigned by the numerous grounds of demurrer, and are insisted on in this court: (1) That there is a misjoinder of parties plaintiff; that is, that the declaration does not show a right of action in all three plaintiffs; and (2) that the declaration does not show a breach of the contract sued on.

The declaration is very elaborate in the statement of the cause of action, but it will only be necessary here to summarize its statements, giving in full the parts relating to the points of attack. The action is brought by I. D. Block, Louis Bry, and Emil Weil, who will hereafter be called "the plaintiffs," against the mayor and boards of councilmen and aldermen of the city of Meridian, who will be referred to as "the defendant." The jurisdiction of the Circuit Court is shown

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

by allegations of diverse citizenship. It appears from the declaration that the defendant on May 5, 1905, granted to I. W. Ullman and his associates the right to light by electricity the city of Meridian for a term of five years from May 1, 1906. The contract was made pursuant to a published notice soliciting bids, the notice specifying the extent of the services to be rendered, and prescribing that each bid should be accompanied by a certified check for $1,000, and that the successful bidder should, within 60 days after the contract was awarded to him, execute bond for $10,000. The notice provided that, in addition to the city lighting, the bids should cover the matter of rates to private consumers. In addition to the right to light the city for five years, the successful bidder was to have a franchise for a period of 45 years; that is, the right to use the streets and avenues for planting poles and stringing wires and operating a lighting plant for that period. The notice contained the further stipulation that the successful bidder would not be permitted to sell out to any competing company, on penalty of forfeiting the franchise and $10,000. Two bids were made. The Ullman bid was the best, and it was duly accepted, and the contract was awarded to him and "his associates," the contract being evidenced by an ordinance of the defendant, duly executed, spread on the minutes, and published as required by the city charter of the defendant. Ullman was the agent and representative of the plaintiffs, and the plaintiffs were the "associates" referred to in the ordinance. Having stated these preliminary facts, the declaration sets out the ordinance contract, which is copied in the margin.[1]

---

[1] "Section 1. Be it ordained by the mayor and boards of councilmen and aldermen of the city of Meridian, state of Mississippi, hereinafter called the grantor, that I. W. Ullman, his associates, successors and assigns, hereinafter called the grantee, in consideration of the contract and provisions contained herein, is hereby granted a non-exclusive franchise for a period of forty-five years from May 1st, 1906, to May 1st, 1951, subject only to the conditions herein contained, all of which are made a part of this contract; the grantee is given the right to build, construct, own, acquire, lease, maintain and operate lines, poles, conduits, man-holes, and all other equipments that may be necessary for the transmission of electrical energy for supplying heat, light, power and other purposes, and to occupy with their poles, lines and equipments the streets, alleys, lands, squares, and public places in the city of Meridian, but no building or power plant shall be erected on the public ground of the said city.

"Sec. 2. The grantee agrees not to sell its property to the Meridian Light & Railway Company without the consent of the city first being obtained therefor, and the further payment of $10,000.00.

"Sec. 3. The poles for said electric lights shall be cedar, cypress, chestnut or juniper, and set or erected under the supervision of the street commission and the street committees, and if the said grantee shall, in placing or repairing the said poles, wires or other appliances, damage the streets of said city, they shall immediately repair the same, at their own expense.

"Sec. 4. The said grantee is authorized and empowered to trim such trees along the streets and alleys as may be necessary, under the supervision of the street commissioner, and the said grantor shall have the privilege of using the poles erected by the said grantee for the purpose of maintaining an electric fire and patrol system, so long as the said fire alarm or patrol system does not interfere with the electric light and power plant of grantee.

"Sec. 5. In consideration of the payments to be made, and the covenants to be kept and performed by the city, and hereinafter mentioned, the said grantee

The declaration then proceeds to show that:

"The said I. W. Ullman, acting for himself and plaintiffs, filed with said defendant a bond for $10,000, in accordance with the terms of the ordinance contract, said bond being signed by the National Surety Company of New York, and being strictly conditioned in accordance with the terms of said contract."

Having alleged the contract and the plaintiffs' ability, readiness, and willingness to perform, the declaration makes the following averments as to its breach:

"Plaintiffs further aver that it was the deliberate design and purpose of defendant, influenced by improper motives, and especially influenced and controlled by the defeated competitor for said contract ordinance, the Meridian Light & Railway Company, to arbitrarily and illegally deprive said plaintiffs of said contract ordinance and their rights thereunder, and defendant resorted to any expedient, however unscrupulous or reprehensible it might have been, to avoid its obligations under its said contract ordinance, and, therefore, notwithstanding the said contract ordinance was in all respects binding and obligatory and in full force and effect, the said defendant, in order to avoid

shall furnish the said city of Meridian, for the period of five years from May 1st, 1906, to May 1st, 1911, 200 or more alternating current enclosed arc lamps, operating in series, said lamps to be $66/10$ amperes, potential of not less than 72 volts between terminals of each arc lamp, and apparent wattage for 475 watts for each lamp—a maximum of forty lamps on the circuit known as the 'City Circuit,' or 'Business Section of the City,' within the fire limits, to burn all night, and all other lamps to run on the moon-light schedule. The city contracts to pay the grantee for the 200 or more arc lamps, as mentioned above $69.50 per annum, per lamp, to be paid in equal monthly instalments, on the 10th day of each month for the previous month supplied, said lights to be located by the lighting committee, and a plan of location furnished not later than thirty days after passage of this ordinance to said grantee, said lamps to be hung over the intersection of the streets at not less than 16 feet, and not more than 25 above the surface thereof, said grantee shall keep the lamps in good repair and condition.

"If after the lamps are once lighted the said lamps should cease to burn from any cause whatever, except when occasioned by the city authorities and the provisions of the schedule, then such time shall be deducted, pro rata, to be made by said city, as hereinafter mentioned.

"And it is further provided, that if said city shall desire to change the location of said lights, or any of them, from the place or places where the same may be first located, then the city shall pay the actual expenses of such removal, and change.

"The grantee further agrees to furnish without cost to the grantor, from their incandescent circuit light to the amount of five hundred dollars per annum, and 11¢. rate per thousand watts, amount to be determined by meter or meters, from May 1st, 1906, to May 1st, 1911.

"Sec. 6. If the said city, the grantor herein, shall desire any lights in addition to those herein provided for, the same shall be placed in position for the said grantors by said grantees, at such places within the corporate limits of the said city, as the said grantor shall elect, provided said lights are to be placed not more than 1,500 feet from the points where other street lights are placed under the contract, and said grantors shall pay for the same at the rate of $69.50 per annum per lamp, and lamps to be of the same type as hereinbefore mentioned, provided that no lamps shall be installed later than January 1st, 1908.

"Sec. 7. Said grantee agrees to indemnify and save the said city of Meridian harmless from any and all damages growing out of the construction and operation of said lighting system.

"Sec. 8. The franchise and contract embodied in this ordinance shall be in full force and effect and binding and obligatory on the grantor and grantee,

its own obligation and prevent the said ordinance contract having full scope and effect and operation, pretended to regard its solemn ordinance as a mere negotiation, and hence, in its repudiation resolution hereinafter referred to, adopted the abnormal and misleading phraseology therein contained, that the 'negotiations were canceled and annulled.'

"Plaintiffs further aver that there were no 'negotiations' to be canceled and annulled, but only a valid and solemn contract, and that defendant, in utter disregard of the rights of plaintiffs, and its own solemn promises and covenants, on August 3, 1905, deliberately canceled and rescinded said contract ordinance, and then and there adopted the following:

" 'The following preamble and resolution cancelling the negotiations for lighting the city by I. W. Ullman, was read, considered, and unanimously adopted:

" 'Whereas, on the 5th day of May, 1905, certain negotiations were entered into between the mayor and boards of councilmen and aldermen of the city of Meridian, of the one part, and I. W. Ullman, his successors and assigns, of the other part, said negotiations looking to the lighting of the streets by the said Ullman, his successors and assigns, from the 1st day of May, 1906, and for five years thereafter; and,

" 'Whereas, the said I. W. Ullman, his successors and assigns, have failed and refused to consummate or carry out said negotiations,

" 'Now, therefore, be it resolved that the negotiations above referred to between the said mayor and boards of councilmen and aldermen with the said Ullman are hereby canceled and annulled and held for naught.

" 'Approved.                                          J. H. Rivers, Mayor.'

from and after its approval and publication. The grantee shall be required to furnish a bond for $10,000.00 that it will begin furnishing service by May 1st, 1906; failing to do this, said bond shall be declared forfeited.

"Sec. 9. The said grantor shall pass such ordinances as may be necessary for the due and complete legal protection of said grantee in the enjoyment of all rights and privileges conveyed to them by said ordinances, and attached to such an ordinance penalties or fines, and imprisonment for interfering with, or injury or damage to, the electrical property of said grantee.

"Sec. 10. In consideration of the benefits to be derived by the city from this ordinance and contract, the said grantee, his associates, or successors, and assigns, and said electric light and power plant, and its business and property, upon the payment of $25.00 per annum privilege tax, the same being the privilege tax now levied by law, shall be exempt from the payment of any privilege tax in excess of said sum for the period of ten years from and after the 1st day of May, 1906.

"Sec. 11. Any delays caused by acts of Providence, orders of court, strikes and lockouts, or unavoidable accidents, shall work an extension of the time herein granted equal to the number of days delayed, but upon any delay being occasioned by the grantee, (he) shall notify the mayor in writing, stating the cause of delay.

"Sec. 12. Said grantee shall not be required to put any of their wires underground.

"Sec. 13. The grantee is given the right to sell, assign, or encumber any or all their rights and privileges under this ordinance, but always subject to the provisions and limitations of this contract.

"Sec. 14. Should the grantee fail to comply with any of the provisions of this contract, it shall work a forfeiture of all privileges herein contained, except as are specially otherwise provided for, and further, provided that the grantor shall give the grantee sixty days' written notice, during which time the grantee shall have the right to remedy any failure in the fulfillment of his contract.

"Sec. 15. The grantee shall install in all plants operated by them smoke consuming devices of the most improved type.

"Sec. 16. This ordinance, in accordance with law, shall take effect and be in force from and after its passage, approval and publication in 'The Evening Star,' a newspaper published in the city of Meridian, Mississippi."

"Approved May 6th, 1905."

"Plaintiffs aver that by the adoption of said resolution it was the purpose and intention of defendant to rescind and cancel said contract ordinance and deprive plaintiffs of any rights thereunder, and that by the adoption of said resolution their said purpose was effectually accomplished, and that thereafter said plaintiff had no right to, and could not use, the streets of defendant for the erection of their poles and wires and erect the necessary machinery and plant to furnish light and power under said contract ordinance.

"Plaintiffs further aver that said defendant, not content with the rescission and cancellation of said contract ordinance, and thereby divesting plaintiffs of any rights thereunder, in pursuance of its determination to injure plaintiff and benefit its competitor, the said Meridian Light & Railway Company, it, the defendant, on the same date, granted said five years' lighting contract to the said Meridian Light & Railway Company, the latter company already using the streets of said city under former ordinances in the erection of its poles and wires."

The following allegations are made to show the right of the plaintiffs to sue on the contract in their own names:

"Plaintiffs show that the said Ullman, in writing, on the 30th day of July, 1906, transferred and set over to one of their number all his right, title, and interest to said ordinance contract and franchise, and all his claims and damages of every kind and description for damages accruing or arising to him by virtue of the said defendants failing to carry out said contract ordinance, and authorizing the said I. D. Block in his name, and associates, to institute and prosecute for his own use and benefit, and at his own expense, any and every suit and proceeding that he might deem proper for the enjoyment and enforcement of said ordinance contract, or any right growing out of or based upon the same, or of any claim or demand or right whatsoever by him assigned. A copy of that part of said instrument showing said assignment is filed with the original declaration herein, marked 'Exhibit 7,' and made a part hereof.

"Plaintiffs show that said contract was made by said Ullman as their agent and representative after careful investigation into local conditions, and after satisfying himself as to the desirability and profitableness of such a contract, coupled with the 45-year privileges and franchises offered in defendant's said published solicitation for bids; and while the said Ullman alone was specifically named in the said contract, yet it further appears that it was made on behalf of others as well, and such others are referred to therein as 'his associates,' and plaintiffs are the undisclosed principals referred to therein as his 'associates,' and the said assignment above was taken to divest him, the said Ullman, of any apparent ownership or interest therein or in the damages resulting from the breach thereof."

Upon this statement of the case, the question for decision is, whether or not the court erred in sustaining the demurrer to the declaration and dismissing the suit.

1. Was there a fatal defect in the declaration by reason of a misjoinder of parties plaintiff?

The theory of the defendant is that the ordinance contract was made with Ullman, no one else being specifically named; that he transferred his interest to I. D. Block, one of the plaintiffs; that the other two plaintiffs, Bry and Weil, have no interest in the contract, and that, therefore, they are misjoined as plaintiffs. If this position were correct, the declaration could be amended by striking out the misjoined plaintiffs, and the case could proceed with Block as sole plaintiff. But, on the averments of the declaration, there is no misjoinder. The contract was made with Ullman and his associates. It is alleged that Ullman was the agent of the plaintiffs, and that the contract was, in fact, made for the plaintiffs as principals. The three plaintiffs were

so interested in the contract from the first; they were the bidders, the givers of the bond, and the undisclosed principals of the entire negotiation and agreement. The transfer made by Ullman to Block was a mere formality to show that, in fact, he had no substantial interest, although he was named in the ordinance. If we assume, as we must for the purposes of this decision, that the allegations are true, the transfer was a meaningless formality, inasmuch as Ullman had no real interest. We have an action, then, by three undisclosed principals suing on a written contract made in the name of their agent. Can such action be brought, and is evidence admissible to show that, although the contract is made in the name of Ullman, he was merely the agent for the unnamed principals?

It is a well-established rule of law, both in England and in this country, that, where a contract is made by an agent, the principal whom he represents may maintain an action on it in his own name, although the name of the principal was not disclosed at the time of the making of the contract; and, when the contract is in writing, parol evidence is admissible to show that the agent was acting for his principal. Such evidence does not contradict the writing; it only explains the transaction. The English and American cases so holding are cited by the Supreme Court in New Jersey Steam Navigation Co. v. Merchants' Bank, 6 How. 344, 380, 12 L. Ed. 465, and in Ford v. Williams, 21 How. 287, 16 L. Ed. 36, the principle was again announced, and Ford was allowed to sue at law on a written contract made for him by his agent, Bell, without disclosing Ford's name or interest. The only question in the case was, assuming the contract to have been made for the benefit of the plaintiff without any disclosure to the defendant of his interest, was the plaintiff competent to maintain a suit thereon in his own name? The Supreme Court decided that he was. That case is conclusive of this case on the point we are discussing. If the allegations of the declaration are true, Block, Bry, and Weil can sue in their own names for the breach of the contract.

2. The remaining question is, does the declaration allege a breach of the contract?

The declaration shows that, before the time for performance, the defendant, by formal resolution, renounced the contract. The determination of the defendant not to comply with the contract could not be more clearly shown than by a resolution "that the negotiations * * * [referring to the contract] are hereby cancelled and annulled and held for naught." It is true that one party to a contract cannot cancel it, but his attempted cancellation may show his renunciation of it—may show that he does not intend to abide by it or to perform his part of it. This clearly appears to have been the defendant's intention. This renunciation of the agreement having been made by the defendant, it seems well settled that the plaintiffs had the right to treat the contract as broken and ended, and to sue for its breach at once. The parties to an executory contract have a right to something more than its performance when the time for performance arrives. They have a right to the maintenance of the contractual relation. It follows that the renunciation of the contract by one of the parties, be-

fore the time for performance has come, entitles the other, if he chooses, to regard the contract as ended, and to sue at once for the breach. Clark on Contracts, § 270, p. 645; Lawson on Contracts, § 440. In Roehm v. Horst, 178 U. S. 1, 11, 20 Sup. Ct. 780, 44 L. Ed. 953, the cases are cited and approved which hold that, if one party to an executory contract repudiates it before the time for performance arrives, it is a breach, and the other party may sue at once.

The judgment of the Circuit Court is reversed, and the cause remanded with instructions to overrule the demurrer and for further proceedings.