## FIRST NAT. BANK OF DENVER v. FEDERAL RESERVE BANK OF KANSAS CITY, MO. ·

(Circuit Court of Appeals, Eighth Circuit. May 25, 1925.)

No. 6859.

1. **Banks and banking** ⟐➔159—Indorsement of checks in blank and deposit for transmission and collection held not to transfer title to bank.

Where checks were indorsed in blank and deposited for transmission and collection, and bank credited customer's account, subject to right to charge checks back if payment was not received, title to checks was not transferred to bank.

2. **Banks and banking** ⟐➔171(6) — Bank accepting check for collection undertakes collection as independent contractor, and there is no privity between owner of check and correspondent bank.

Initial bank, accepting check for collection, undertakes collection as independent contractor,

in absence of statute or contract to contrary, and there is no privity of contract between owner of check and initial bank's correspondent.

3. **Banks and banking** ⟐➔171(6) — Bank may agree to receive check for transmission, and become responsible only for good faith and discretion in choice of its agent.

Duties and responsibilities of bank receiving check for collection depend on contract with owner of check, and it may agree to receive check solely for transmission to its correspondent, and thus become responsible only for good faith and due discretion in choice of agent.

4. **Banks and banking** ⟐➔171(6) — Distinction between accepting check "for collection" and "to be transmitted for collection" stated.

Where bank receives check "for collection," it undertakes as independent contractor to collect check by all proper means, and its responsibility extends to such means, by whomsoever used; but, where it agrees to transmit for collection, its sole responsibility is to select and transmit to a competent agent with proper instructions.

[Ed. Note.—For other definitions, see Words and Phrases, For Collection.]

5. **Banks and banking** ⟐➔162—First bank to accept bill of exchange for collection becomes agent of and liable to owner thereof.

Where owner of bill of exchange indorses and delivers it to bank to transmit for collection, first bank accepting it for collection becomes agent of, and liable to, owner.

6. **Banks and banking** ⟐➔175(3)—Correspondent presumed to have accepted checks for collection without limiting liability, burden being on it to prove contrary.

Correspondent bank, to which checks were transmitted for collection, is presumed to have accepted them for collection without limitation as to its liability, and burden is on it to show contrary, and it was therefore immaterial whether correspondent bank knew that transmitting bank had limited its liability, since its liability for its negligence was same, whether it acted as agent for transmitting bank or for owner.

7. **Principal and agent** ⟐➔143(2)—Agent's contract inures to benefit of undisclosed principal.

Where agent, acting within his authority, enters into simple contract in his own name for benefit of undisclosed principal, contract inures to principal's benefit, and principal may sue in his own name for breach thereof, or of legal duty growing out of it.

8. **Principal and agent** ⟐➔143(5) — Defenses available against agent are available against undisclosed principal.

Defenses available against agent to person contracting with him without knowledge of agency are available against undisclosed principal.

9. **Banks and banking** ⟐➔171(1)—Correspondent bank held liable to owner of checks transmitted to it for collection.

Where checks were indorsed in blank, to be transmitted for collection under agreement that

"this bank will observe due diligence in its endeavor to select responsible agents, but will not be liable in case of their failure or negligence," correspondent to which bank sent checks for collection, and which did not limit its liability, was liable to owner of checks for breach of its legal duties in collecting checks.

**10. Banks and banking ☞161(3)—Collecting bank held liable to owner of checks for loss sustained in accepting drawee's draft on another bank.**

Federal Reserve Bank, to which checks were transmitted for collection, which accepted draft of drawee on another bank in payment, was liable to owner of checks for loss sustained, in absence of authority to accept anything other than money in payment of checks.

**11. Banks and banking ☞161(3)—Regulation of Federal Reserve Board held not to authorize Federal Reserve Bank to accept draft in payment of check.**

Regulation of Federal Reserve Board, authorizing Federal Reserve Bank to act as agent for collection of checks on other banks and to send checks to drawee banks, *held* not to authorize Federal Reserve Bank, in collecting check, to accept from drawee bank a draft in payment thereof.

In Error to the District Court of the United States for the District of Colorado; John Foster Symes, Judge.

Action by the First National Bank of Denver against Federal Reserve Bank of Kansas City, Mo. Judgment for defendant was rendered by the District Court (283 F. 700), and plaintiff brings error. Reversed and remanded.

Horace Phelps, of Denver, Colo. (Gerald Hughes, Clayton C. Dorsey, and James D. Benedict, all of Denver, Colo., on the brief), for plaintiff in error.

Mason A. Lewis, of Denver, Colo. (James B. Grant and Robert L. Stearns, both of Denver, Colo., and James E. Goodrich and H. G. Leedy, both of Kansas City, Mo., on the brief), for defendant in error.

Before KENYON, Circuit Judge, and TRIEBER and PHILLIPS, District Judges.

PHILLIPS, District Judge. The First National Bank of Denver, hereinafter called plaintiff, brought this action against the Federal Reserve Bank of Kansas City, hereinafter called defendant, to recover the sum of $8,851.46, damages alleged to have been caused by the negligence of the defendant in the collection of nine checks.

The second amended complaint of plaintiff in substance alleges:

That the plaintiff is a national banking corporation organized and existing under the national banking laws of the United States;

that the defendant is a Federal Reserve Bank organized and existing under the Federal Reserve Act; and that the Citizens' State Bank of Ordway, Colo. (hereinafter called Citizens' Bank), was a state bank organized and existing under the laws of the state of Colorado.

"That on, to wit, the 27th day of September, 1921, and both prior and subsequent thereto, John Amicon Bro. & Co. (hereinafter called Amicon Company), of Ordway, Colo., was the owner of a commercial or checking account in the said the Citizens' * * * Bank, * * * the balance therein to the credit of said depositor being in excess of the sum of eight thousand eight hundred fifty-one dollars forty-six cents ($8,-851.46); that prior to said date, the * * * Amicon * * * Company, for value, made, executed and delivered to the Hallack & Howard Lumber Company (hereinafter called Lumber Company), of Denver, Colo., nine (9) certain checks drawn by the * * * Amicon * * * Company to the order of the * * * Lumber Company for the aggregate sum of eight thousand eight hundred fifty-one dollars forty-six cents ($8,-851.46). * * *

- "That on the 27th day of September, 1921, the * * * Lumber Company indorsed said nine checks and deposited the same with the plaintiff * * * to transmit for collection; that the deposit slip accompanied by said deposit made by said * * * Lumber Company, contained the following provisions:

" 'This bank will observe due diligence in its endeavor to select responsible agents, but will not be liable in case of their failure or negligence or for loss of items in the mail. Checks on this bank will be credited conditionally; if not found good at the close of business on day deposited they will be charged back to the depositor and the latter notified. All items are credited subject to final cash payment and are handled at risk of depositor.'

"That on said date, to wit, the 27th day of September, 1921, said plaintiff * * * did credit the amount of said checks at face to the checking or commercial account of said * * * Lumber Company with said plaintiff, and did, in the usual course of business, indorse and deliver said checks and other checks for collection to the defendant, Federal Reserve Bank of Kansas City, Denver Branch."

That thereafter the defendant indorsed each of said checks on the back thereof as follows: "Pay to the order of any bank

or trust company. All previous indorsements guaranteed. September 28, 1921. Denver Branch, Federal Reserve Bank Kansas City, Denver, Colorado"—and thereupon transmitted said checks directly to the Citizens' Bank for payment. That on October 5, 1921, the Citizens' Bank issued for said nine checks and other checks its draft, drawn on the Central Savings Bank & Trust Company of Denver, in favor of the defendant, for the sum of $9,928.19, stamped said nine checks "paid," debited the account of Amicon Company with the amount thereof, and returned the checks to the Amicon Company. That on October 5, 1921, the Citizens' Bank transmitted said draft by mail to the defendant, and on October 6, 1921, the defendant received and accepted the same.

That on October 8, 1921, the Citizens' Bank was closed by the order of the state bank commissioner of Colorado; that on October 6, 1921, the defendant presented said draft to the drawee bank, and payment was refused; that on October 25, 1921, defendant notified plaintiff by letter that said checks had not been collected; and that the defendant was holding said unpaid draft therefor.

That prior to the commencement of this action the Lumber Company assigned to the plaintiff all its right, title, and interest in and to said checks, and its claim and cause of action against the defendant on account of the matters and things alleged in the second amended complaint.

That the defendant, in acting as the collecting agent of said checks, was negligent and violated its duty in the following respects:

*    *    *    *

"(c) In failing to collect from said drawee bank the amount of said checks in cash.

"(d) In accepting for said checks a draft to its order in payment thereof.

"(e) In transmitting and delivering to said drawee bank said checks without receiving therefor in cash the amount thereof and in placing itself in a position of inability to restore said checks to the plaintiff.

*    *    *    *

"(g) In failing to use ordinary diligence in requiring said drawee bank to promptly pay said checks or return the same."

To this second amended complaint the defendant demurred upon the ground that it did not state facts sufficient to constitute a cause of action. The lower court sustained the demurrer. The plaintiff elected to stand on its second amended complaint, and thereupon judgment was entered dismissing the action at the cost of plaintiff. From this judgment, the plaintiff sued out a writ of error to this court.

At the hearing on the demurrer plaintiff announced that it sought recovery, not upon any liability directly from defendant to plaintiff, but solely upon the assigned cause of action.

The assignments of error raise one principal question: Does the second amended complaint state facts sufficient to constitute a cause of action against the defendant? The defendant contends that there was no privity of contract between the Lumber Company and the defendant, and that therefore the foregoing question should be answered in the negative.

[1] Although the checks were indorsed in blank, they were indorsed and deposited to be transmitted for collection, and the credit given therefor in the account of the Lumber Company with the plaintiff bank was subject to the right to charge the checks back to such account if payment therefor in cash was not received. Such being the facts, the indorsement did not transfer the title to the checks to the plaintiff. First National Bank of Eads v. Fleming State Bank, 74 Colo. 309, 221 P. 891; Burton v. U. S., 196 U. S. 283, 303, 25 S. Ct. 243, 49 L. Ed. 482; Note 7 L. R. A. (N. S.) 694; 3 R. C. L. § 152, p. 524; 7 C. J. § 245, p. 597; Id. § 246, p. 600.

[2] There exist two rules among the state courts touching the responsibility of banks undertaking collections at a distance. One, known as the New York rule, is that, where a bank undertakes to collect a check or other bill of exchange, it is liable for neglect of duty in its collection arising from the default either of its own officers or any subagent employed to assist in collecting the paper, in the absence of contract or statute varying such liability. The other rule, known as the Massachusetts rule, is that the initial bank is liable only for the selection of a suitable local agent with whom to entrust the collection and for the transmission of the paper to such agent with proper instructions. Exchange National Bank v. Third National Bank, 112 U. S. 276, 281, 5 S. Ct. 141, 28 L. Ed. 722; Federal Reserve Bank of Richmond v. Malloy et al., 264 U. S. 160, 164, 44 S. Ct. 296, 68 L. Ed. 617, 31 A. L. R. 1261.

Under the New York rule there is no privity of contract between the owner and the subagent. Under the Massachusetts rule, the bank to which the initial bank forwards the paper for collection becomes the agent of the owner. Bank v. Malloy, supra.

The New York rule has been adopted and

followed by the national courts. Bank v. Malloy, supra; Exchange National Bank v. Third National Bank, supra; Cal. National Bank v. Utah National Bank (C. C. A. 8) 190 F. 318, 111 C. C. A. 218; Smith v. National Bank of D. O. Mills & Co. (C. C.) 191 F. 226; City of Douglas v. Federal Reserve Bank of Dallas (C. C. A. 5) 2 F.(2d) 818.

The underlying principle of the New York rule is that the initial bank, in the absence of statute or contract to the contrary, undertakes the collection of the paper as an independent contractor.

In Exchange National Bank of Pittsburgh v. Third National Bank of New York, supra, the Exchange National Bank having discounted before acceptance 11 drafts, drawn by Rogers and Burchfield, at Pittsburgh, in favor of J. D. Baldwin, on Walter M. Conger, Sec'y Newark Tea Tray Company, Newark, New Jersey, transmitted them to the Third National Bank for collection. The latter sent them to its correspondent, the First National Bank of Newark. The Exchange National Bank sought to hold the Third National Bank for the defaults of the Newark bank. The court in part said:

"The agreement of the defendant in this case was to collect the drafts, not merely to transmit them to the Newark bank for collection. This distinction is manifest; and the question presented is whether the New York bank, first receiving these drafts for collection, is responsible for the loss or damage resulting from the default of its Newark agent. There is no statute or usage or special contract in this case, to qualify or vary the obligation resulting from the deposit of the drafts with the New York bank for collection. On its receipt of the drafts, under these circumstances, an implied undertaking by it arose, to take all necessary measures to make the demands of acceptance necessary to protect the rights of the holder against previous parties to the paper. * * * The contract, then, becomes one to perform certain duties necessary for the collection of the paper and the protection of the holder. The bank is not merely appointed an attorney, authorized to select other agents to collect the paper. Its undertaking is to do the thing, and not merely to procure it to be done. In such case, the bank is held to agree to answer for any default in the performance of its contract; and, whether the paper is to be collected in the place where the bank is situated, or at a distance, the contract is to use the proper means to collect the paper, and the bank, by employing subagents to perform a part of what it has contracted to

do, becomes responsible to its customer. This general principle applies to all who contract to perform a service. * * *

"The distinction between the liability of one who contracts to do a thing and that of one who merely receives a delegation of authority to act for another is a fundamental one, applicable to the present case. If the agency is an undertaking to do the business the original principal may look to the immediate contractor with himself, and is not obliged to look to inferior or distant undercontractors or subagents, when defaults occur injurious to his interest.

"Whether a draft is payable in the place where the bank receiving it for collection is situated, or in another place, the holder is aware that the collection must be made by a competent agent. In either case, there is an implied contract of the bank that the proper measures shall be used to collect the draft, and a right, on the part of its owner, to presume that proper agents will be employed, he having no knowledge of the agents. There is, therefore, no reason for liability or exemption from liability in the one case which does not apply to the other. And, while the rule of law is thus general, the liability of the bank may be varied by consent, or the bank may refuse to undertake the collection. It may agree to receive the paper only for transmission to its correspondent, and thus make a different contract, and become responsible only for good faith and due discretion in the choice of an agent. If this is not done, or there is no implied understanding to that effect, the same responsibility is assumed in the undertaking to collect foreign paper and in that to collect paper payable at home. On any other rule, no principal contractor would be liable for the default of his own agent, where from the nature of the business, it was evident he must employ subagents. The distinction recurs, between the rule of merely personal representative agency and the responsibility imposed by the law of commercial contracts. This solves the difficulty and reconciles the apparent conflict of decision in many cases. The nature of the contract is the test. If the contract be only for the immediate services of the agent, and for his faithful conduct as representing his principal, the responsibility ceases with the limits of the personal services undertaken. But where the contract looks mainly to the thing to be done, and the undertaking is for the due use of all proper means to performance, the responsibility extends to all necessary and proper means to accomplish the object, by whomsoever used."

[3] From the foregoing it will be observed that the duties and responsibilities of the initial bank depend upon the contract made between it and the owner. Instead of contracting to undertake the collection of the item, the initial bank "may agree to receive the paper only for transmission to its correspondent, and thus make a different contract, and become responsible only for good faith and due discretion in the choice of an agent."

[4] What was the agreement in the instant case? Under the express allegations of the second amended complaint, which for the purposes of the demurrer stand as admitted, the checks were indorsed and delivered to the plaintiff, not to collect, but "to transmit for collection," under a contract expressly limiting the liability of plaintiff, the initial bank. As said by the Supreme Court, in Exchange National Bank v. Third National Bank, supra, the distinction between an agreement to collect and an agreement to transmit for collection is manifest. In the former, the initial bank undertakes as an independent contractor to collect the paper, "the contract looks mainly to the thing to be done, the undertaking is for the due use of all proper means to performance," and "the responsibility extends to all necessary and proper means to accomplish the object, by whomsoever used." In the latter, the agreement is to transmit for collection, and the sole responsibility of the initial bank is to select and transmit to a competent agent with proper instructions. Clearly, under the contract plaintiff limited its liability to transmit the checks to a competent agent with proper instructions.

The right of the initial bank to so limit its liability by contract is clearly recognized by those jurisdictions which follow the New York rule. They say the Massachusetts rule may be imported into the contract by statute or by agreement, express or implied. Bank v. Malloy, supra; Exchange National Bank v. Third National Bank, supra; Cal. National Bank v. Utah National Bank, supra; Capital Grain & Feed Co. v. Federal Reserve Bank of Atlanta (D. C.) 3 F.(2d) 614, 615; Note 52 L. R. A. (N. S.) 634.

[5] The plaintiff indorsed and transmitted the checks to the defendant "for collection," and the defendant received and accepted them for collection. Where the owner of a bill of exchange indorses and delivers the same to a bank, not to collect, but as the agent of the owner to transmit for collection, the first bank, accepting the paper for collection, becomes the agent of and liable to the owner. McBride v. Ill. Nat. Bank, 163 App. Div. 417, 148 N. Y. S. 654; Id., 138 App. Div. 339, 121 N. Y. S. 1041; Columbia Overseas Corp. v. Banco Nacional Ultramarino, 198 App. Div. 699, 191 N. Y. S. 85, 87; Kelley v. Phenix National Bank, 17 App. Div. 496, 45 N. Y. S. 533; Bank of Washington v. Triplett & Neale, 26 U. S. (1 Pet.) 25, 7 L. Ed. 37.

In McBride v. Bank, supra, the facts were substantially these: On May 10, 1907, the Western Tool Works, of Galesburg, Ill., made its promissory note, due September 10, 1907, to the order of the Goodyear Tire & Rubber Company of Akron, Ohio, for $6,432.44, payable at the Galesburg National Bank, Galesburg, Illinois. The Rubber Company indorsed the note for discount to the National City Bank of Akron, Ohio. Shortly before the maturity of the note, the National City Bank sent it to its correspondent, the First National Bank of Cleveland, Ohio, for collection. The latter acknowledged receipt of the same in a letter containing the following:

"In receiving and forwarding paper outside of this city, this bank acts only as your agent, using its best efforts in selecting its correspondents, and will assume no responsibility except for its own acts."

The Cleveland bank forwarded the note to the Commercial National Bank of Chicago, Ill. The latter acknowledged the same on a postal card upon which was printed the following:

"All items not payable in Chicago, received by this bank for collection or credit, are taken at owner's risk. This bank, as agent for owner, will forward such items to banks out of this city, and assumes no responsibility for neglect, default or failure of such banks, nor for losses occurring in the mail. Should any bank convert the proceeds or remit therefor in checks or drafts which are dishonored, the amount for which credit has been given will be charged back and dishonored paper returned."

The Chicago bank transmitted the note to the Illinois National Bank, for collection, and the latter bank accepted the note for collection. The Illinois National Bank forwarded the note to the People's Trust & Savings Bank, of Galesburg, Ill. McBride, as assignee of the National City Bank, sought to hold the Illinois National Bank for the neglect of the People's Trust & Savings Bank in failing to properly present the note for payment, whereby an indorser was discharged from liability. The court held that the undertaking of the Cleveland and Chicago

banks were not to collect, but to transmit for collection, that the Peoria Bank was the first bank to undertake without qualification or limitation of liability the collection of the note, and that the Peoria bank became the agent of the National City Bank for the collection of the note and was liable for the negligence of its correspondent.

In the recent case of Capital Grain & Feed Co. v. Federal Reserve Bank of Atlanta (D. C.) 3 F.(2d) 614, where a check was deposited in the bank for collection and credit subject to an agreement that "this bank acts only as collecting agent, and assumes no liability on account of delay or loss while items are in transit, or until it receives final actual payment from its correspondents," the court held that the correspondents through which the initial bank sent the check for collection were not the agents of the initial bank, but agents of the depositor, and that any right of action against the correspondents for delay or default was in the depositor.

[6] But counsel for defendant contend that, notwithstanding the checks were indorsed and delivered by the Lumber Company to the plaintiff solely to be transmitted for collection, and the defendant received the checks from the plaintiff for collection, still there was no privity of contract between the Lumber Company and defendant. They say this is true because the checks were indorsed by the Lumber Company in blank, the defendant had no knowledge that the plaintiff had so limited its duties and liabilities by contract, and plaintiff did not, in employing defendant to collect the checks, advise the latter that plaintiff was acting as the agent of the Lumber Company.

Under the facts now disclosed by the pleadings, we cannot see how want of knowledge of the contract and the agency should make any difference. The presumption is that the defendant accepted the checks for collection without agreement, express or implied, limiting its liability. The burden is upon it to show the contrary. National Revere Bank v. National Bank of Republic, 172 N. Y. 102, 108, 64 N. E. 799; McBride v. Illinois National Bank, supra. Therefore its duties in the premises were exactly the same, whether it was acting as the agent of the plaintiff or of the Lumber Company, and it can make no difference to defendant whether it is called upon to answer for its neglect of duty to the plaintiff or to the Lumber Company, as its principal.

[7] Furthermore, it is well settled that,

where an agent, acting within his authority as such, enters into a simple contract in his own name with a third person for the benefit of his undisclosed principal, the contract inures to the benefit of the principal, and such principal may appear, claim the benefits of such contract, and sue in his own name for a breach of the contract or of a legal duty growing out of the same. New Jersey Steam Navigation Co. v. Merchants' Bank of Boston, 47 U. S. (6 How.) 343, 378, 379, 380, 12 L. Ed. 465; Block et al. v. Mayor, etc., of City of Meridian, Miss. (C. C. A. 5) 169 F. 516, 521, 95 C. C. A. 14; Morris v. Chesapeake & O. S. S. Co. (D. C.) 125 F. 62, 66, 148 F. 11, 78 C. C. A. 179; Fernandina Shipbuilding & Dry Dock Co. v. Peters et al. (D. C.) 283 F. 621, 626; Ford v. Williams, 62 U. S. (21 How.) 287, 16 L. Ed. 36; Baldwin v. Bank of Newbury, 68 U. S. (1 Wall.) 234, 17 L. Ed. 534; 2 C. J. 873; 21 R. C. L. § 72, p. 897.

In Ford v. Williams, supra, an agent of Ford made a written contract in the agent's name for the benefit of Ford with Williams, without disclosing Ford's name or interest. The court held Ford might maintain an action at law on the contract in his own name against Williams. The court said:

"The contract of the agent is the contract of the principal, and he may sue or be sued thereon, though not named therein."

[8] In an action by the undisclosed principal against the other party to such a contract, the latter, if he entered into the contract without knowledge of the agency or of facts which charge him with notice thereof, may avail himself of any defense which existed in his favor against the agent at the time of the disclosure to him of the existence of the real principal. New Jersey Steam Navigation Co. v. Bank, supra; 2 C. J. p. 877; 21 R. C. L. § 77, p. 901; note 28 L. R. A. (N. S.) 227.

In the case of Bank of Washington v. Triplett & Neale, 26 U. S. (1 Pet.) 25, 7 L. Ed. 37, the facts were these: Triplett & Neale were the owners of an inland bill of exchange dated June 19, 1817, drawn by W. H. Briscoe, for $625.34, at four months after date, in favor of Triplett & Neale, upon Peter A. Carnes, of Washington, D. C. Triplett & Neale delivered the bill to the cashier of Mechanics' Bank of Alexandria, to be transmitted to a bank in Washington for collection, and indorsed it in blank for that purpose. The cashier of the Mechanics' Bank of Alexandria indorsed the bill to the order of S. Elliott, Jr., cashier of the Bank

of Washington, and forwarded the same by mail to the Bank of Washington for collection. Triplett & Neale brought an action against the Bank of Washington to recover damages for malagency in connection with the collection of the bill. At the trial the Bank of Washington moved the court to instruct the jury to find a verdict in its favor. Two of the grounds therefor were the same as are here suggested in the contentions made by the defendant. Chief Justice Marshall, in passing on these contentions, said:

"The plaintiffs in error [Bank of Washington] insist, that the Circuit Court ought to have given the instructions first asked, because, first, no privity existed, between the real holder of the bill and the Bank of Washington. That bank was not the agent of Triplett & Neale, but was the agent of the Mechanics' Bank of Alexandria. Some cases have been cited to show that, if an agent employed to transact a particular business engages another person to do it, that other person is not responsible to the principal. On this point, it is sufficient to say that these cases, however correctly they may have been decided, are inapplicable to the case at bar. The bill was not delivered to the Mechanics' Bank of Alexandria, for collection, but for transmission to some bank in Washington, to be collected. That bank would, of course, become the agent of the holder By transmitting the bill, as directed, the Mechanics' Bank performed its duty, and the whole responsibility of collection devolved on the bank which received the bill for that purpose; the Mechanics' Bank was the mere channel through which Triplett & Neale transmitted the bill to the Bank of Washington.

"The deposit of a bill in one bank, to be transmitted for collection, to another, is a common usage of great public convenience, the effect of which is well understood. This transaction was, unquestionably, of that character, and there is no reason for suspecting that the Bank of Washington did not so understand it. The duty of that bank was precisely the same, whoever might be the owner of the bill; and, if it was unwilling to undertake the collection, without precise information on the subject, that duty ought to have been declined. The custom to indorse a bill put in bank, for collection, is universal; and the Bank of Washington had no more reason for supposing that Triplett & Neale had ceased to be the real holders, from their indorsement, than for supposing that the cashier of the Bank of Washington had be-

come the real holder, by the indorsement to them. It is the customary proceeding, for collection, in such cases, and is for the advantage of the party interested."

[9] Assuming the truth of the facts alleged in the complaint, we conclude that the defendant undertook in behalf of the Lumber Company, the collection of the checks, and is directly answerable to the Lumber Company for any breach of its legal duties in connection therewith.

[10] So far as the record now discloses. the defendant had no authority to accept anything other than money in payment of the checks. When it surrendered the checks and accepted the draft of the Citizens' Bank in payment thereof, it became liable to the owner of the checks for any resulting loss. Federal Reserve Bank v. Malloy, 264 U. S. 160, 165, 44 S. Ct. 296, 68 L. Ed. 617, 31 A. L. R. 1261.

[11] Counsel for defendant urge that under the provisions of regulation J (8), Series 1920, promulgated by the Federal Reserve Board, it was authorized to accept the draft of the Citizens' Bank in payment of the checks. This identical question was passed on in Bank v. Malloy, supra, and decided adversely to defendant's contention.

It follows that the second amended complaint stated a cause of action against the defendant, and that the lower court erred in sustaining the demurrer thereto. The judgment is therefore reversed, and the cause remanded for further proceedings in conformity with this opinion.

TRIEBER, District Judge (concurring). I concur in a reversal of this judgment upon the ground that the complaint alleges that the checks in controversy were deposited with the plaintiff "to transmit for collection," and upon the express agreement between it and its depositor, that "all items are credited subject to final cash payment and are handled at risk of depositor." These allegations are admitted by the demurrer to the complaint.

The plaintiff was therefore acting only as agent of the depositor in indorsing and delivering them to the defendant for collection, and sues as assignee of the Hallock & Howard Lumber Company, its principal, although undisclosed at the time the checks were delivered to the defendant. So far as the defendant is concerned, the undisclosed principal may maintain an action against the agent selected by its agent to collect the checks as established by the authorities cited in the opinion of Judge PHILLIPS.

But counsel for the defendant in his brief and argument insisted: That section 11, par. (i), of the Federal Reserve Act (Comp. St. § 9794), authorized the Federal Reserve Board "to make all rules and regulations necessary to enable said board effectively to perform the same (referring to the powers granted to the Federal Reserve Bank).

That in pursuance of that authority the Federal Reserve Board by regulation J, Series of 1920, promulgated the following rule:

"(8). In handling items for member and nonmember clearing banks, a Federal Reserve Bank will act as agent only. The board will require that each member and nonmember clearing bank authorize its Federal Reserve Bank to send checks for collection to banks on which checks are drawn, and, except for negligence, such Federal Reserve Bank will assume no liability. Any further requirements that the board may deem necessary will be set forth by the Federal Reserve Banks in their letters of instruction to their member and nonmember clearing banks. Each Federal Reserve Bank will also promulgate rules and regulations to be binding upon all member and nonmember banks, which are clearing through the Federal Reserve Bank."

That by that regulation each Federal Reserve Bank is authorized to promulgate rules and regulations to be binding upon all member and nonmember banks which are clearing through the Federal Reserve Bank.

That pursuant to this authority the defendant Federal Reserve Bank issued General Letter No. 223, dated November 15, 1919, containing among other regulations, the following:

"In accepting checks and drafts from member and clearing member banks, the Federal Reserve Bank of Kansas City will act as agent only, and will be liable in no case, except for negligence. The Federal Reserve Bank of Kansas City reserves the right to charge back against the member of clearing member bank's account, all unpaid items and any other items, returns for which cannot be converted into available funds. Such items will be charged back whether or not the original checks or drafts can be returned to the member or clearing member bank.

"The sending of items by member and clearing member banks to the Federal Reserve Bank of Kansas City for credit will be construed as adopting the instructions stated herein; accepting the provisions here detailed as to relationship of the Federal Reserve Bank of Kansas City in handling transit business, and authorizing the Federal Reserve Bank of Kansas City in its discretion to forward any items for payment direct to the bank on which they are drawn."

And it is claimed that these regulations of the Federal Reserve Board and the defendant Federal Reserve Bank have the same force and effect, as if a part of the act of Congress, and the courts will take judicial notice of them, without being pleaded or established by evidence at the trial of the cause, citing Caha v. United States, 152 U. S. 211, 14 S. Ct. 513, 38 L. Ed. 415, and the many cases following it. Whether the authority to make rules and regulations applies to any other powers of the Federal Reserve Board than those specified in that paragraph (i), or applies to all the powers enumerated in section 11 of the act, or whether Congress can grant the power to make regulations, which are to have the force and effect of a law, to others than the President or the head of a department of the government, it is unnecessary to determine at this hearing, for there is certainly no provision in the act of Congress authorizing the Federal Reserve Banks to make regulations, which shall have the force and effect of law and of which the courts must take judicial notice, without being pleaded and established at the trial by competent evidence.

It will be noticed that in Federal Reserve Bank v. Malloy, 264 U. S. 160, 164, 44 S. Ct. 296, 298 (68 L. Ed. 617, 31 A. L. R. 1261), the court did not determine whether the Federal Reserve Bank was negligent in sending the check direct to the drawee bank, as authorized by that regulation of the board, saying:

"For the purpose of the case, we assume the correctness of the decision below, holding that the Richmond Bank was not negligent in sending the check directly to the bank on which it was drawn, and consider only whether the acceptance of an exchange draft, found to be worthless, instead of money, creates an enforceable liability."

It then proceeded to hold that the acceptance of an exchange draft, which proves worthless, makes the collecting bank liable to the payee of the check for the resulting loss.

Neither of the regulations, that of the Federal Reserve Board, or that of the Federal Reserve Bank was taken judicial notice of by the court in its opinion.

If these regulations or either of them have not the force and effect of a law, the court cannot take judicial notice of them, but they must be pleaded and at the trial established

by proper evidence. As there was no such plea, the case having been disposed of on the demurrer to the amended complaint, I concur in a reversal.